**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND BLOW, : <br> : <br> Plaintiff, : <br> : **Civil Action No. 11-2128 (SRC)** <br> v. : <br> : **OPINION** <br> PATERSON POLICE DEPT., ET AL., : <br> : <br> Defendants. : <br> : <br> : | |

**CHESLER**, District Judge

      This matter comes before the Court on motions by the Defendants, as follows: (1) Defendant Detective W. Palomino ("Palomino"), for summary judgment pursuant to Rule 56(e) [docket entry 20]; (2) Detective Marvin Sykes ("Sykes"), to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [docket entry 24]; (3) Defendant Detective Ronald Altman ("Altman"), to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and for summary judgment pursuant to Rule 56(c) [docket entry 22]; and (4) Defendants James F. Avigliano, Esq. ("Avigliano") (for the Passaic County Prosecutor's Office), Joanne Kaminski, Esq. ("Kaminski"), Lisa A. Verlardi, Esq. ("Verlardi"), and Andrew C. Palestini, Esq. ("Palestini"), to dismiss Counts VII through X of the Complaint, pursuant to Federal Rule of Civil Procedure 12(c) [docket entry 21]. Plaintiff Raymond Blow ("Plaintiff"), who proceeds *in forma pauperis*, did not oppose the motions. The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, the Court will grant the Defendants' motions.

I.  **BACKGROUND**

This case arises from a May, 2007 criminal investigation of the Plaintiff, his subsequent guilty plea, and related post-conviction proceedings. The Complaint alleges that Paterson Police Detective Orlando J. Robinson ("Robinson") conspired with Detectives Palomino and E. Taylor ("Taylor") to obtain a warrant to search Plaintiff's residence, based upon the false assertion that an informant had purchased drugs from the Plaintiff on May 6, 2007. (Compl., ¶ 10-12, 14.) Plaintiff avers that the Paterson Police Department knowingly and negligently funded the undercover operation, and that public funds were utilized to purchase narcotics and falsify evidence against the Plaintiff through the informant. *Id.* ¶¶ 1-8. Moreover, when Detectives Robinson, S. Griffin ("Griffin"), Altman and T. Bailey ("Bailey") executed the search warrant on May 16, 2007, they unlawfully seized $10,467 in cash from Plaintiff's residence, gathering some of those monies from areas "not embraced in the search locations" set forth in the warrant. *Id.* ¶¶ 11, 20. The Detectives also failed to submit an "inventory and receipt" associated with the search, and to complete and execute the "Supplemental Operations Report," which should have been attached to the Narcotics Investigation Report dated May 16, 2007. *Id.* ¶¶ 23-24, 27. Instead, the Narcotics Report contained erroneous information designed to incriminate Plaintiff. *Id.* ¶ 35. Plaintiff alleges that Defendant Detective Lieutenant R. Reid ("Reid") signed this Report, although he lacked direct knowledge of the events set forth therein.

According to the Complaint, Detective Sykes, together with the aforementioned officers, and the Passaic County Prosecutor's Office, conspired to tamper with evidence. Detective Sykes compromised the physical evidence recovered from Plaintiff in order to support the indictment, and to deprive Plaintiff of a defense. *Id.* ¶¶ 40, 44-46. County Prosecutor Avigliano knew that Plaintiff's indictment was defective, and nevertheless directed Assistant Prosecutor Kaminski to

proceed to indictment, where she knowingly elicited false testimony regarding the search of Plaintiff's home. *Id.* ¶¶ 48-49, 53. As a result, Plaintiff was indicted by a Grand Jury on four drug-related counts, on September 12, 2007. *Id.* ¶¶ 53-54.

At the inception of the indictment, Plaintiff was assigned a Passaic County Public Defender, one Larry Smith, Esq. ("Smith"). Plaintiff avers that Smith, although aware of the "faulty arrest warrants and home search warrants," refused to make pretrial motions to suppress evidence. Plaintiff also asserts that Smith conspired with other Defendants to avoid raising a defense for Plaintiff, and instead "sat on his hands." *Id.* ¶¶ 85-86. However, according to public records, Smith did in fact file a motion to suppress evidence on October 16, 2007, resulting in a hearing on the motion, held on April 8th and 9th of 2008. (Miklacki Cert., Ex. B., Aug. 31, 2010 Letter Op. & Order of Mizzone, J.S.C., at 118 PCPO.) On April 9, 2008, the subject indictment resulted in a mistrial, and on May 14, 2008, Plaintiff entered a guilty plea on the first count of the indictment: Possession of a Controlled Substance, a crime in the third degree. *Id.* On September 4, 2008, Plaintiff was sentenced to four years in custody, pursuant to the plea agreement. *Id.*

Plaintiff further alleges that Special Deputy Attorney General Verlardi "maliciously" instituted a civil forfeiture action (entitled "State of New Jersey v. $726 in U.S. Currency, et al.") in the Superior Court o f New Jersey, Special Civil Part, and obtained a default judgment against Plaintiff on January 11, 2008. (Compl., ¶ 72.) The subject of that action was a portion of the currency collected from Plaintiff's residence during the May 16, 2007 search. According to the Complaint, Verlardi initiated the proceeding despite her knowledge that the Honorable Phillip H. Mizzone, J.S.C., had "thrown out" the evidence utilized to support the warrant for said search.[1]

---

[1]Plaintiff alleges that Judge Mizzone ruled that the seizure of $4,930 from Plaintiff's truck, and $4,600 from his basement were violations of Plaintiff's Fourth Amendment rights.

*Id.* ¶¶ 71-74.  However, as noted above, public records indicate that the hearing on Plaintiff's motion to suppress evidence did not occur until April of 2008, several months later.

Plaintiff also filed a Post-Conviction Relief Petition, alleging that he had been denied effective assistance of counsel by Smith, and seeking to withdraw his guilty plea.  (Miklacki Cert., Ex. B, at P118.)  Plaintiff alleges that the Passaic County Prosecutor who litigated this action, Defendant Palestini, knew that Plaintiff's post-conviction claims had validity, but elected "not to remedy the wrongs of the Settlement Agreement." (Complaint, ¶ 81.)  The Letter Opinion and Order entered by Judge Mizzone on August 31, 2010 denied Plaintiff's post-conviction application, finding that he had not made a prima facie case of ineffective assistance of counsel, and that he had not demonstrated a manifest injustice which would justify a withdrawal of his guilty plea.  (Miklacki Cert., Ex. B, at P121-22.)

Plaintiff filed the within Complaint on April 21, 2011, raising a host of claims against the Defendants: intentional infliction of emotional distress, slander, negligence, fraud, false imprisonment, malicious prosecution, racial discrimination, due process violations, and conspiracy.

Defendants Palomino, Sykes, Altman, Avigliano (for the Passaic County Prosecutor's Office), Kaminski, Verlardi, and Palestini now move to dismiss the Complaint, and for summary judgment.  Plaintiff filed no opposition to the motions.  For the reasons that follow, the Court shall grant the Defendants' motions, and dismiss Plaintiff's claims with prejudice

II.   **DISCUSSION**

    A.   **Standard of Review**

        1. <u>Motion to Dismiss</u>

The Court must review these motions pursuant to Federal Rule of Civil Procedure

12(b)(6), which provides for dismissal of a claim for failure to state a claim upon which relief may be granted.  Federal Rule of Civil Procedure 8(a) requires that to state a claim for relief, a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  When evaluating the sufficiency of claims subject to the pleading requirements of Rule 8(a), the Court must apply the plausibility standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).  In *Twombly* and *Iqbal*, the Supreme Court stressed that a complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556.)  The cases are also clear about what will not suffice: "threadbare recitals of the elements of a cause of action," an "unadorned, the-defendant-unlawfully-harmed-me accusation" and conclusory statements "devoid of factual enhancement." *Id.* at 1949-50; *Twombly*, 550 U.S. at 555-57.  While the complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, allegations that give rise to the mere *possibility* of unlawful conduct will not do.  *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 557.  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents and matters of public record. *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003).

"When a plaintiff does not seek leave to amend a deficient complaint after a defendant

moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). *See also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile).

        2. <u>Summary Judgment</u>

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the non-moving party. *See Boyle v. Cnty. Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where, as here, the nonmovant (plaintiff) would bear the burden of persuasion at trial, "the party moving for summary judgment may meet its burden of proof by showing that the evidentiary record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden at trial." *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 [43 Fair Empl. Prac. Cas. (BNA) 681] (3d Cir.), *cert. dismissed*, 483 U.S. 1052 (1987).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at

586; *see also Anderson*, 477 U.S. at 247-48.  Pursuant to Federal Rule of Civil Procedure 56(e), the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), *cert. denied*, 507 U.S. 912 (1993)).

      **B.**      **Analysis**

As an initial matter, Plaintiff repeats, against all Defendants, accusations of "theft by deception" and "extortion," but these are crimes in the State of New Jersey, not civil causes of action.  *See, e.g., Russo v. Nagel*, 358 N.J. Super. 254, 267 (N.J. Sup. Ct. App. Div. 2003).  Thus, Plaintiff fails to state a plausible claim for relief against any of the Defendants with respect to these allegations.  *Twombly*, 550 U.S. at 570 (holding that, to survive a motion to dismiss, a complaint must "state a claim for relief that is plausible on its face.").

      1.  <u>Civil Rights Claims against Detectives Altman, Sykes & Palomino</u>

The Defendant Detectives Altman, Sykes and Palomino ("Detectives") first argue that Plaintiff's constitutional claims relating to his May 16, 2007 arrest and September, 2007 indictment are time-barred, and must be dismissed with prejudice.  Plaintiff appears to raise false arrest, false imprisonment, illegal search, equal protection, due process and malicious prosecution claims under 42 U.S.C. § 1983, as well as a civil conspiracy claim under § 1985. Section 1983 provides, in pertinent part:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of

>any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A cause of action under this section accrues when the plaintiff knew, or should have known, of the injury forming the basis of his or her action. *See Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1988). Section 1983 contains no statute of limitations. However, the Supreme Court of the United States has determined that the applicable statute of limitations for Section 1983 actions is the appropriate state personal injury statute. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985) (holding that this broad application to *all* Section 1983 actions is justified by the statute's remedial purpose, and by practical considerations).[2] In the State of New Jersey, there is a two-year statute of limitations on personal injury actions, N.J.S.A. § 2A:14-2,[3] and thus a two-year statute of limitations on Section 1983 actions. *See Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989).

      a. False Arrest & False Imprisonment Claims

Section 1983 claims of false arrest and false imprisonment, where such arrest and imprisonment are followed by criminal proceedings, accrue upon the plaintiff's arraignment, or other legal process. *Montgomery v. DeSimmone*, 159 F.3d 120, 126 (3d Cir. 1998) ("A claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of

---

[2] *Wilson v. Garcia* was superceded in part (in a manner not relevant to Section 1983 claims) by 22 U.S.C. § 1658, which created a four-year statute of limitations for all federal statutes enacted subsequent to 1990, where such statutes lack their own limitations provisions. *See, .e.g., Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 381 (2004).

[3] This section provides, in part: "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within two years next after the cause of any such action shall have accrued. . . ."

detention until the issuance of process or arraignment, and not more.") (internal citation omitted); *Telfair v. Tandy*, 797 F. Supp. 508, 520 (D.N.J. 2011) (holding that claims for false imprisonment accrue "immediately upon the arrest at issue, and the period of limitations begins to run as soon as the false imprisonment ends, i.e., when the arrestee becomes held pursuant to legal process," such as arraignment) (citing *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007)). In this case, the allegedly unlawful search of Plaintiff's residence occurred on May 16, 2007. Although the date of Plaintiff's arraignment is unclear, he was indicted on charges relating to the search on September 20, 2007. Plaintiff did not file his Complaint until April 21, 2011, more than three years after the indictment. Thus, Plaintiff's false arrest and false imprisonment claims against the Detectives are time-barred, and will be dismissed with prejudice.

b. Illegal Search, Due Process, Equal Protection & Conspiracy Claims

Plaintiff alleges that the Detectives lacked probable cause to search his home and seize monies found therein, and that they conspired to target him for these violations because of his race. Moreover, Plaintiff asserts that Detective Sykes conspired with the other officers and prosecutors to give false testimony respecting the search, and to withhold or tamper with evidence. Thus, upon his arrest and indictment, Plaintiff knew, or should have known, of the injury forming the basis of his illegal search, due process and equal protection claims. *See Sameric Corp.*, 142 F.3d at 599. Plaintiff's arrest and indictment having occurred more than two years before his Complaint was filed, these claims are time-barred, and will be dismissed with prejudice.

The Court will construe Plaintiff's conspiracy allegations as claims under 42 U.S.C. § 1985(3), which provides a cause of action if:

(1) two or more persons conspire to deprive any person of the equal protection of the law;

>   (2) one or more of the conspirators performs or causes to be performed any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States.

*Barnes Found. v. Twshp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  A Section 1985(3) claim accrues when the plaintiff "knew or should have known of the alleged conspiracy." *Bougher v. Univ. of Pitts.*, 882 F.2d 74, 80 (3d Cir. 1989).  "The statute of limitations, accordingly, runs from the date of each overt act causing damage to the plaintiff." *Id.*  The Third Circuit applies the two-year, personal injury statute of limitations to Section 1985(3) violations. *Id.* at 79-80 ("Because Section 1985(3) violations necessarily involve a conspiracy to deprive another of rights, privileges, and immunities, the underlying deprivations sound in tort." Accordingly, the appropriate state personal injury statute of limitations applies to Section 1985(3) claims.).  In this case, the date of the last possible overt act causing damage to the Plaintiff would be his indictment on September 20, 2007, more than two years prior to the filing of the Complaint.  Indeed, even if Plaintiff alleged that his guilty plea on May 14, 2008 was coerced in furtherance of the Defendants' conspiracy, the plea was also entered more than two years prior to the filing of the Complaint.  Thus, Plaintiff's Section 1985 conspiracy claim against the Detectives is time-barred, and will be dismissed with prejudice.

   c. Malicious Prosecution

 A Section 1983 claim for malicious prosecution accrues on the date that the underlying criminal proceedings end in the plaintiff's favor. *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989).  Indeed, a necessary element of a malicious prosecution claim is the favorable termination of the underlying criminal proceedings.  *See Lee v. Mihalich.*, 847 F.2d 66, 70 (3d Cir. 1988) ("[A] civil action for malicious prosecution requires that: (1) the defendant initiate a criminal

proceeding; (2) *which ends in plaintiff's favor*; (3) which was initiated without probable cause; and (4) the defendant acts maliciously or for a purpose other than bringing the defendant [sic] to justice."); *see also Lind v. Schmid*, 67 N.J. 255, 262 (1975). Thus, the Court must address this element of Plaintiff's cause of action before reaching the statute of limitations argument. Prior criminal proceedings "must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element." *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (en banc). In this case, the criminal proceedings at issue were not disposed of in a manner indicative of Plaintiff's innocence, because Plaintiff pleaded guilty to possession of a controlled substance on May 14, 2008, and he does not allege that his conviction was reversed or vacated. (Miklacki Cert., Ex. B, at PCPO 118.) Indeed, his petition for post-conviction relief was denied. *Id.* Moreover, the remaining counts of Plaintiff's indictment were dismissed as a result of a plea agreement, not as a result of Plaintiff's innocence. *See White v. Brown*, 408 Fed. Appx. 595, 599 (3d Cir. 2010). Thus, Plaintiff cannot meet the favorable termination element of his malicious prosecution claim, and the Court will dismiss it with prejudice.

2.  State Law Claims against Detectives Altman, Sykes & Palomino

Detectives Altman, Sykes and Palomino further argue that, to the extent Plaintiff raises ancillary state-law tort claims, such as intentional infliction of emotional distress, negligence, or slander, same are time-barred.[4] Indeed, the two-year statute of limitations on personal injury actions in New Jersey bars any claims against the Detectives for intentional infliction of emotional distress, or negligence, since such claims could only be related to Plaintiff's arrest and

---

[4]Defendants also argue that such claims are barred by Plaintiff's failure to provide a notice of claim, as required by the Tort Claims Act ("TCA"), N.J.S.A. 59:8-8. The Court need not reach this argument as to the Detectives; however, the argument is addressed below with respect to Defendant Palestini.

indictment in 2007. N.J.S.A. § 2A:14-2. With respect to any claim for slander by the Detectives, such a claim is similarly barred by a one-year statute of limitations. N.J.S.A. § 2A:14-3. Thus, the Court will dismiss these claims with prejudice.

3. Timeliness of Plaintiff's Claims against Avigliano, Kaminski and Verlardi

Defendants Avigliano (for the Passaic County Prosecutor's Office), Kaminski and Verlardi argue that Plaintiff's claims in Counts VII through IX of the Complaint (the Counts raising allegations against these particular Defendants) are time-barred, and must be dismissed pursuant to Federal Rule of Civil Procedure 12(c).[5]

Plaintiff's Section 1983 equal protection, malicious prosecution and conspiracy claims against Defendants Avigliano and Kamiski arise from Plaintiff's arrest and indictment in May and September of 2007, and for the reasons set forth in Section II.B(1) herein, are indeed time-barred. With respect to Defendant Verlardi, the Assistant Prosecutor who brought the civil action entitled "The State of New Jersey v. $726 in U.S. Currency, et al." Plaintiff alleges that she obtained default judgment against the Plaintiff, and that this amounted to a malicious and intentional violation of Plaintiff's constitutional rights. However, the default judgment was obtained on January 11, 2008, more than three years prior to the filing of Plaintiff's Complaint on April 11, 2011. (Compl., ¶ 72.) Thus, any claim under Section 1983 arising out of Verlardi's actions in obtaining the default judgment is time-barred by the two-year statute of limitations applicable to all such claims. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); N.J.S.A. § 2A:14-

---

[5]This subsection of Rule 12 provides that ". . . After the pleadings are closed – but early enough not to delay trial – any party may move for judgment on the pleadings." Though procedurally it applies later in a case than a Rule 12(b) motion, which may be filed in lieu of a responsive pleading, a motion brought under 12(c) for failure to state a claim upon which relief may be granted is governed by the same standard applicable to Rule 12(b)(6) motions. *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

2.  To the extent that Plaintiff raises State law tort claims against Avigliano, Kaminski and Verlardi, same are similarly barred, for the reasons set forth in Section II.B(2) herein. Counts VII through IX of the Complaint are accordingly dismissed with prejudice.

### 5. Defendant Palestini's Immunity from Suit

Defendants contend that Plaintiff's Section 1983 claims against Assistant Prosecutor Palestini, who litigated Plaintiff's post-conviction relief application, are barred by Palestini's immunity from suit under the Eleventh Amendment. A suit by a private party against either a state or its agencies is barred by the Eleventh Amendment to the United States Constitution, which provides that

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

*See also Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (citing *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937); *Meyer v. New Jersey*, 460 F.2d 1252, 1253 (3d Cir. 1972)). Only two exceptions to Eleventh Amendment immunity have been recognized by the Supreme Court: waiver of immunity by the state, and abrogation of immunity by Congress. *Alden v. Maine*, 527 U.S. 706, 755-56 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996); *Ex parte New York*, 256 U.S. 490, 497 (1921); *Welch v. Texas Dep't of Highways & Public Transp.*, 483 U.S. 468, 487 (1987). A state's immunity from suit under the Eleventh Amendment extends to an agency or department of the state, and to a state official if he or she is sued in his or her official capacity, wherever the state is the "real party in interest;" that is, whenever "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102, 79 L. Ed.

2d 67, 104 S. Ct. 900 (1984) ("*Pennhurst II*") (citing *Dugan v. Rank*, 372 U.S. 609, 610 (1963)); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985) (noting that "official capacity suits 'generally represent only another way of pleading an action against an entity of which the officer is an agent.'") (internal citation omitted).

Although Congress may abrogate Eleventh Amendment immunity by statute in limited circumstances, the United States Supreme Court has held that 42 U.S.C. § 1983 does not override a State's immunity.  *Quern v. Jordan*, 440 U.S. 332, 350 (1979).  The defendant in a § 1983 action, to be liable within the meaning of the statute, must be a "person."  A State is not a "person" within the meaning of § 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989) (holding that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.").  Accordingly, a state official acting in his or official capacity is not a person within the meaning of § 1983.  *Id.* at 71 (holding that a suit against a state official in his or her official capacity is not a suit against the official, but a suit against the official's office, and is thus "no different than a suit against the State itself.").  However, State officials may be held personally liable for actions taken in the course of their official duties.  *Hafer v. Melo*, 502 U.S. 21, 25 (1993) ("[O]n the merits, to establish personal liability in a Section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.") (quoting *Kentucky v. Graham*, 473 U.S. at 167).

Here, Defendants argue that Palestini enjoys Eleventh Amendment immunity from suit under Section 1983, but they fail to properly distinguish between official and personal capacity suits.  As an initial matter, Plaintiff's Complaint does not specify whether he seeks relief from the Defendant Palestini in his official or individual capacity; he alleges that Palestini

"individually" engaged in unlawful conduct, but also alleges "official" misconduct. (Compl., ¶ 81.) The Third Circuit instructs that district courts should examine the complaint and the "course of proceedings" to determine whether a plaintiff has sued defendants in their individual capacities, official capacities, or both. *Moore v. Cuttre*, 2010 U.S. Dist. LEXIS 62390, at * 6-7 (D.N.J. June 23, 2010) (citing *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991)). Defendants assert that, because Plaintiff seeks relief from Palestini for conduct committed in the course of his official duties, Plaintiff therefore must bring suit against him only in his official capacity. The Court disagrees. As elucidated above, whether the alleged wrongdoing occurred in the course of a Defendant's official duties is not relevant to the question of capacity; indeed, personal capacity suits under Section 1983 are intended to vindicate the rights of individuals who suffer constitutional violations at the hands of persons, including State employees, acting "under color of state law." *Tarkanian*, 488 U.S. at 191. In construing the Complaint, the relevant factors include whether the relevant State is named as a defendant, any immunity defenses raised by the defendants, and the nature of the relief sought by the Plaintiff. *Moore*, 2010 U.S. Dist. LEXIS 62390 at *6-7. Plaintiff's Complaint does not name the State of New Jersey as a defendant. The named Defendants offer as defenses both official capacity immunity, and personal capacity immunity (discussed hereinbelow). Finally, Plaintiff seeks a host of relief, including compensatory and punitive damages, indicating that he intended to sue Defendants in their individual capacities. *See Gregory v. Chehi*, 843 F.2d 111, 119-20 (3d Cir. 1988). The Court therefore concludes that Plaintiff sues the named Defendants in both their official and individual capacities. *Hafer v. Melo*, 502 U.S. at 25.

Plaintiff's claims against Palestini in his official capacity are, in effect, another way of pleading an action against the entity of which an Palestini is an agent, in this case, the Passaic

County Prosecutor's Office. *Will*, 491 U.S at 71. Thus, the operative question is whether the Passaic County Prosecutor's Office is an arm of the State, such that it is immune from suit under the Eleventh Amendment. In *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989), the Third Circuit established three elements to determine whether an entity is an arm of the State for Eleventh Amendment purposes: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." With respect to the first factor, the New Jersey Supreme Court has held that the State may be held vicariously liable for the conduct of its agents, including state prosecutors, in the enforcement of state laws. *Wright v. State of New Jersey*, 169 N.J. 422, 452-455, 778 A.2d 443 (2001) (noting that county prosecutors are considered "State officers."). The Supreme Court reasoned that, although county prosecutors are paid by the county, the State Attorney General has supervisory responsibility over the law enforcement and prosecutorial activities of the county prosecutor's office, and in fact has statutory authority to supercede a county prosecutor in any investigation or action. *Id.* at 454. Here, Plaintiff sues Palestini for conduct committed in the course of his prosecutorial functions. Since the State of New Jersey would pay any money judgment awarded against Palestini in his official capacity, and since the State Attorney General has supervisory authority over the Passaic County Prosecutor's Office, it is an "arm of the State" for Eleventh Amendment purposes, and its immunity extends to Plaintiff's official-capacity claims against Palestini. *See also Davis v. Twp. of Lakewood*, 2005 U.S. Dist. LEXIS 16420, at *17-21 (D.N.J. Aug. 4, 2005) (holding, pursuant to the analysis set forth in *Fitchik,* that the State of New Jersey was the real party in interest in the plaintiff's Section 1983 suit against Ocean County, the Ocean County Prosecutor's Office, and the County Prosecutor); *see also Hussein v. New Jersey*, 2010 U.S. Dist. LEXIS 22602, at *17-18 (D.N.J.

Mar. 10, 2010).

With respect to Plaintiff's claims against Palestini in his individual capacity, the Defendants invoke the doctrine of absolute immunity. Absolute immunity is not only a defense to liability, but "embodies the right not to stand trial," and is properly raised in a motion to dismiss. *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008). A prosecutor bears a "heavy burden" in establishing a right to absolute immunity in the context of a Section 1983 action, in light of the Supreme Court's limited application of the doctrine; thus, the Third Circuit instructs courts to begin with the presumption that only qualified immunity is appropriate. *Id.* (citing *Light v. Haws*, 472 F.3d 74, 80-81 (3d Cir. 2007); *Carter v. City of Philadelphia*, 181 F.3d 339, 355 (3d Cir. 1999)). "To overcome this presumption, the prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question." *Id.* (citing *Yarris v. County of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006)). Thus, focusing on the function performed, rather than the identity of the actor, a prosecutor enjoys absolute immunity for "actions performed in a judicial or quasi-judicial capacity." *Id.* (citing *Guiffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994)). Absolute immunity therefore attaches to actions "'intimately associated with the judicial phases of litigation,' but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Id.* (quoting *Guiffre*, 31 F.3d at 1251) (internal citations omitted). If the challenged activity is a part of a prosecutor's "personal involvement as the state's advocate in adversarial post-conviction proceedings," such activity is included within the prosecutor's absolute immunity from suit. *Yarris*, 465 F.3d at 137.

Here, Plaintiff's Complaint is bereft of detail with respect to his allegations against Palestini, but he takes issue with Palestini's litigation of Plaintiff's Petition for Post-Conviction Relief, which was denied by Judge Mizzone on August 31, 2010. (Miklacki Cert., Ex. B, at

PCPO 117.)  Plaintiff generally alleges that Palestini should have offered Plaintiff a renegotiation of Plaintiff's sentence, or of the civil judgment against him,[6] and that Palestini "knew" that Plaintiff's post-conviction application had merit.  (Compl., ¶ 80.)  Plaintiff thus complains of Palestini's conduct as the state's advocate in adversarial post-conviction proceedings.  Palestini enjoys absolute immunity from suit for actions performed in such a capacity, and Plaintiff's Section 1983 claims against him are therefore dismissed with prejudice.  *See Yarris*, 465 F.3d at 137.

### 6.  Plaintiff's State-Law Claims against Palestini

Defendants argue that, to the extent Plaintiff raises state-law tort claims against Palestini, same are barred by N.J.S.A. 59:8-8, the mandatory notice provisions set forth in the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:1-1 et seq.  N.J.S.A. 59:8-8 provides, in part:

> A claim relating to a cause of action for . . . injury or damage to person or to property shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. . . .  The claimant shall be forever barred from recovering against a public entity or a public employee if (a) he failed to file his claim with the public entity within 90 days of the accrual of his claim except as otherwise provided in Section 59:8-9[7]; or (b) two years have elapsed since the accrual of the claim . . .

The purposes of this notice provision are:

> 1) '[T]o allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) 'to provide the

---

[6]This is a liberal interpretation of Plaintiff's Complaint, which alleges that Palestini "elected not to remedy the wrongs asserted by Plaintiff" in his post-conviction application, and "elected not to remedy the wrongs of the Settlement Agreement Plaintiff entered into with Defendant [Verlardi] on June 23, 2009 . . ."  (Compl., ¶ 80.)  Nothing in the Complaint or public records referenced in this matter sheds any light on the purported Settlement Agreement of June 23, 2009, and thus the Court is at a loss as to its significance.

[7]Section 59:8-9 permits a Superior Court Judge, in his discretion, upon proper application by the claimant, to allow a claim to be filed against a public entity or employee within one year of its accrual, where extraordinary circumstances would justify late filing, and absent substantial prejudice to the entity or employee.

> public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense[,];' . . . (3) 'to afford the public entity a chance to correct the conditions or practices which gave rise to the claim'; and (4) to inform the State 'in advance as to the indebtedness or liability that it may be expected to meet.'

*Beauchamp v. Amedio*, 164 N.J. 111, 121-22 (2000) (internal citations omitted)

Therefore, the Tort Claims Act prohibits suit against a public entity or employee unless notice is provided not later than ninety days after the accrual of the cause of action (that is, ninety days after the occurrence of the injury forming the basis for the claim). *Beauchamp*, 164 N.J. at 121,123. The filing of a lawsuit is not a substitute for this notice requirement, whether the complaint is filed within the 90-day period, or within one year. *Guzman v. City of Perth Amboy*, 214 N.J. Super. 167, 172 (N.J. Sup. Ct. App. Div. 1986). Rather, the notice of claim must be presented to the public entity via hand-delivery, or certified mail. *Id.* at 173. Compliance with these procedural requirements is a critical element of a valid claim, because failure to provide notice within ninety days constitutes a bar to recovery, unless the claimant is a minor or incompetent at the time the cause of action accrues. N.J.S.A. 59:8-8; *Hiton v. Whitman*, 2006 U.S. Dist. LEXIS 28567, at *7-8 (D.N.J. May 10, 2006); *see also Velez v. City of Jersey City*, 180 N.J. 284, 291, 850 A.2d 1238 (2004).

Here, Plaintiff sets forth no allegations that he provided notice of his claim against Palestini within ninety days of the accrual of same, which in this case would have been on or about August 31, 2010, when Judge Mizzone denied Plaintiff's post-conviction relief application. Moreover, Plaintiff did not move for leave of court to file a late tort claims notice within a one-year period of that date, nor has he presented any extraordinary circumstances which would justify such late notice. The Court will dismiss with prejudice Plaintiff's state-law tort claims against Palestini, and thus the entirety of Count X of the Complaint, with prejudice.

### III.     CONCLUSION

For the reasons set forth above, the Defendants' motions to dismiss the Complaint, and for summary judgment, will be granted, and Plaintiff's claims will be dismissed with prejudice.


          /s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: February 2, 2012